# UNITED STATES DISTRICT COURT

For the

MIDDLE District of FLORIDA

Jacksonville Division

Case No. 3:22-CV-1046-TJC-JBT

Jury Trial: Yes

Plaintiffs
SAYDATOU TATIETA
ISMAILA ILBOUDO

-V-

Defendants
AUTO EXPORT SHIPPING INC and
AUTO EXPORT SHIPPING MANAGEMENT;
GRIMALDI DEEP SEA SPA (GRIMALDI) and
GRIMALDI MANAGEMENT;
SSA ATLANTIC, LLC;
HORIZON TERMINAL SERVICES LLC;
HOEGH AUTOLINERS SHIPPING AS and
HOEGH AUTOLINERS MANAGEMENT AS;
HOEGH AUTOLINERS, INC

**AMENDED COMPLAINT**

**I.     The Parties to This Complaint**

**A. The Plaintiffs**

Name: SAYDATOU TATIETA

Street Address: 19350 W Street

City and County: Omaha, Douglas

State and Zip Code: Nebraska 68135

Telephone number: 438-337-4247

E-mail address: tatitasay@yahoo.fr


ISMAILA ILBOUDO,

Street Address: 19350 W Street

City and County: Omaha, Douglas

State and Zip Code: Nebraska 68135

Telephone number: 438-337-4247

E-mail address: ismo_2010@yahoo.fr


**B. The Defendants**

Defendant No. 1 and 2

Name: AUTO EXPORT SHIPPING INC and AUTO EXPORT SHIPPING MANAGEMENT

Street address: 187 MILL Ln #103

City and County: Mountainside, Union

State and Zip: New Jersey 07092

Telephone Number


Defendant No. 3 and 4

Name: Grimaldi Deep Sea SPA (Grimaldi) /and Grimaldi Management

Street address: 13 NAPLES

City and County: VIA MARCHESE

State and Zip: CAMPODISOLA 80133

Telephone Number:


Defendant No. 5

Name: SSA Atlantic LLC

Street address: 1131 SW Klickitat Way

City and County: Seattle

State and Zip: WA 98134

Telephone Number

Defendant No. 6

Name: Horizon Terminal Services

Street address: 818 A1A SUITE 304

City and County: Ponte Vedra Beach

State and Zip: Florida 32082

Telephone Number:

Defendant No. 7 and 8

Name: Hoegh Autoliners Shipping AS and Hoegh Autoliners Management.

Street address: 0277 OSLO

City and County: Drammansveien 134

State and Zip:

Telephone Number:

Defendant No. 9

Name: Hoegh Autoliners INC.

Street address: 2615 Port Industrial Drive Suite 405

City and County: Jacksonville, Duval

State and Zip: Florida 32226

Telephone Number:

**II. Basis for Jurisdiction**

Federal question and Diversity of citizenship

A. This case is brought under the MARITIME LAW OF THE UNITED STATES OF AMERICA.
1. This is an action for damages in excess of 75,000.00 exclusive of costs, and interest.
2. Venue is proper as the event forming the basis of this complaint happened in Duval County, Florida.
3. This case is brought under the maritime law of the United States of America.
4. Plainiffs SAYDATOU TATIETA is the owner of a company that buys and exports vehicles.
5. Plaintiffs SAYDATOU TATIETA owns the following described car: 2017 Toyota RAV4 VIN#JTMWFREV3HD094428.MJK,.
6. Plaintiff ISMAILA ISMAILA, spouse of SAYDATOU TATIETA asserting loss of consortium claims, and negligent and /or intentional infliction of stress, and emotional distress are at follows and was and remains married to the spouse.
7. Defendant HOEGH SHIPPING, a Norwegian for profit corporation, was the manager and operator of *Hoegh Xiamen* at all times material hereto.
8. HOEGH SHIPPING is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, serviced or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
9. Defendant HOEGH MANAGEMENT, a Norwegian for profit corporation, was the manager and operator of *Hoegh Xiamen* at all times material hereto.
10. HOEGH MANAGEMENT is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, serviced or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
11. Defendant HOEGH AUTOLINERS is a New York for profit corporation, with its principal business in Florida, 2615 Port Industrial Drive, Suite 405, Jacksonville, Florida 32226, and was the local arm of HOEGH SHIPPING and assisted with management of the ship and shore operations at all times material hereto.
12. Defendant HORIZON is a Delaware for profit corporation with its principal place of business in Florida, 818 A1A, Suite 304, Ponte Vedra Beach, FL 32082 and was engaging in substantial and not isolated activity within this state. This defendant is a subssidary of HOEGH SHIPPING, and was responsible for obtaining, inspecting, organizing, and preparing the used/junk/wrecked cars portside for safe loading and transport on the *Hoegh Xiamen*.
13. Defendant GRIMALDI is an Italian for profit corporation which was operating the *Hoegh Xiamen* pursuant to a time charter with HOEGH SHIPPING at all times material hereto.

14. GRIMALDI is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, serviced or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
15. Defendant Grimaldi Management was the manager of GRIMALDI at all times material hereto.
16. GRIMALDI MANAGEMENT is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, serviced or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
17. Defendant SSA is a Washington for profit corporation, 1131 SW Klickitat Way, Seattle, WA, 98134-1108, authorized and doing business in Florida. This Defendant was operating as the stevedore and was responsible for the loading of the cargo onto the *Hoegh Xiamen*, that caught on fire and started the fire on or about the 8th deck of the vessel, which then spread throughout the vessel, causing the fire and explosions at issue and ultimately causing the vessel to be a total loss.
18. Defendant SSA is subject to the subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, services or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
19. Defendant Auto Export Shipping INC is a freight forwarding shipping company with its principal place of business in Mountainside, Union County New Jersey, responsible for arranging insured transportation of cargo on board *Hoegh Xiamen*.
20. AUTO EXPORT SHIPPING INC is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, services or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.
21. Defendant AUTO EXPORT MANAGEMENT was the manager of AUTO EXPORT SHIPPING INC at all times material hereto.
22. AUTO EXPORT SHIPPING MANAGEMENT is subject to the jurisdiction of the courts of Florida by virtue of having committed a tort within this State while Defendant was engaged in solicitation or service activities within this state or products, materials or things processed, services or manufactured by the Defendant were used or consumed within this state in the ordinary course of commerce, trade or use, or by engaging in substantial and not isolated activity within this state.

**Facts for all counts**

23. Plaintiff SAYDATOU TATIETA contracted with Defendant AUTO EXPORT SHIPPING INC to arrange insured transportation for a cargo, 2017 TOYOTA RAV4, valued at the time at $19,000 from Jacksonville FL to Benin in May 2020.
24. The cargo was dropped off at the Jacksonville Port and supposed to sail on board the vessel *Hoegh Xiamen* with Grimaldi Lines on June 4, 2020.
25. At all times material, the cargo ship was owned by Norway based Ocean Yield ASA but was bareboat or demise chartered to HOEGH SHIPPING and/or HOEGH MANAGEMENT.
26. HOEGH SHIPPING and/or HOEGH MANAGEMENT then time chartered the *Hoegh Xiamen* to GRIMALDI whereby HOEGH SHIPPING and/or HOEGH MANAGEMENT retained ownership and management, but GRIMALDI staffed the ship with a captain and crew.
27. After loading was completed on June 4, 2020, a fire started on deck 7 or 8 of the *Hoegh Xiamen*.
28. The fire was able to burn undetected because the fire detection systems were disable and turn off while the ship was docked at the port.
29. Plaintiffs were informed that a fire broke on board the vessel *Hoegh Xiamen* after loading was completed on June 4, 2020, at the Jacksonville Port.
30. As a result of the fire plaintiff's cargo, 2017 TOYOTA RAV 4, was damaged and declared a total loss in August 2020, scrapped and a claim was filed.
31. As a result of the fire and resulting claims, plaintiffs BURKINA AUTO GROUP and/or SAYDATOU TATIETA have not only suffered the loss of the cargo, 2017 TOYOTA RAV4 , but also suffered economical, emotional losses and/or damages and loss of client.
32. As a result of the fire and resulting claims the spouse in paragraph 6 has lost the care, comfort, and services of his spouse; suffered and continues to suffer emotional distress and anxiety.

**Count I: Negligence of Hoegh Shipping & Hoegh Management (Owner/Manager)**

47. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 10 and 23 through 32, and further allege.

48. At all times material hereto, Defendant Hoegh Shipping and/or Hoegh Management were the owners the owners/managers of the Hoegh Xiamen and owed a duty to exercise reasonable care towards Plaintiffs cargo.

49. At all times material hereto, Defendant Hoegh Shipping and/or Hoegh Management was/were the "Company" as defined by ISM code 1.1.2 and as such agreed to or assumed or

were otherwise responsible to ensure that the Hoegh Xiamen and its crew complied with all International Maritime Organization and United States codes, statutes and regulations.

50. Defendants Hoegh Shipping and/ or Hoegh Management negligently breached that duty of reasonable care, including but not limited to in the following ways:

a. Failing to maintain the ship in a reasonably safe condition, including but not limited as to the fire prevention, detection, response, and extinguishment;

b. Failing to equip the Hoegh Xiamen with reasonable systems and protections for fires, including appropriate smoke detectors, alarms, video surveillance (CCTV), automatic fire dampers, functioning and/ or adequate fire suppression systems, and fire hose connections— especially given the ship was being utilized to transport highly combustible cargo known to catch fire;

c. Failing to ensure that the crew aboard the Hoegh Xiamen was adequately trained, equipped, supervised, and instructed regarding all aspects of preventing and fighting fires – including but not limited to the proper and time sensitive operations of the CO2 system;

d. Failing to supply and provide sufficient tools and/ or supplied to promptly extinguish a cargo fire onboard and boundary cool the vessel;

e. Failing to implement or follow a Safety Management System compliant with the International Safety Management Code;

f. Failing to implement and follow a cargo plan compliant with the International Maritime Dangerous Goods Code;

g. Permitting dangerous conditions to exist on the ship in violation of industry customs, standards, the exercise of the reasonable care considering the risks at hand, and safety regulations; and

h. Failing to provide a vessel that was reasonably fit for its intended purpose.

51. Hoegh Shipping and/ or Hoegh Management's negligence caused the losses sustained by the plaintiffs as described above.

WHEREFORE, Plaintiffs demand judgment against Defendant HOEGH AUTOLINERS SHIPPING AS, and HOEGH AUTOLINERS MANAGEMENT AS the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, damages endured and punitive damages together with such other relief as the court deems met and just.

### COUNT II: Negligence of Grimaldi and Grimaldi Management

52. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 6, 13 through 16, and 23 through 32 and further allege:

53. At all times material hereto, Defendant Grimaldi DEEP SEA SpA was in possession and control of the *Hoegh Xiamen* and was operating the vessel pursuant to a time charter with Hoegh Shipping and/ or Hoegh Management.

54. Grimaldi owed a duty to exercise reasonable care in the outfitting and operation of the ship, including to plaintiffs' cargo.

55. Defendant Grimaldi was the company as defined by ISM Code 1.1.2 and such agreed to or assumed or was otherwise responsible to ensure that Hoegh Xiamen and its crew complied with all International Maritime Organization and United States codes, statutes, and regulations.

56. Defendant Grimaldi negligently breached its duties of reasonable care, including but not limited to in the following ways:

    a. Failing to maintain the ship in a reasonably safe condition, especially with respect to fire prevention, detection, and extinction systems;

    b. Failing to engage, keep on, adequately inspect and/ or repair known problems with the vessel and its safety systems;

    c. Failing to properly utilize the CO2 system so as to extinguish the blaze before it was permitted to spread;

    d. Failing to implement or follow a Safety Management System compliant with the International Safety Management Code;

    e. Failing to implement of follow a cargo plan compliant with the International Maritime Dangerous Goods Code;

    f. failing to ensure that the crew onboard the Hoegh Xiamen was properly trained and instructed regarding all aspects monitoring, detecting, preventing, and responding to vehicle and ship fires.

    g. failing to maintain adequate tools and supplies to promptly extinguish a vehicle fire onboard the vessel;

    h. failing to adequately monitor the loading of the vessel and storage of cargo, and to extinguish the fire before it spread out of control especially since the fire detection systems were disable;

    i. failing to ensure that vehicles were properly stored, and/or did not have keys in the ignitions, batteries connected, and/or other visible dangers prior to and /or once loaded such as visible leaks and damaged batteries, and

    j. failing to intervene timely the loading when it should have become clear the hazards, with respect to the vehicles, were not being properly addresses.

56. Grimaldi' breach of one or more of these duties proximately caused the losses sustained by the plaintiffs.

WHEREFORE, plaintiffs demand judgement against Defendant GRIMALDI DEEP SEA S.p.A., and Grimaldi Management for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, damages endured and punitive damages together with such other relief as the court deems met and just.

**Count III: Negligence of Horizon & Hoegh Autoliners**

57. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 6 and 11, 12, and 23 through 32, and further allege:

58. At all times material hereto, Defendants Horizon and Hoegh Autoliners were and remain subsidiary corporations of Hoegh Shipping and/or Hoegh Management, and these entities performed the shoreside support work to obtain, store, prepare and facilitate the transportation of the cars on Hoegh ships leaving out of JAXPORT, including the *Hoegh Xiamen*.

59. Horizon and/or Hoegh Autoliners were responsible for obtaining, inspecting, organizing, storing, and preparing the cargos for transport on the *Hoegh Xiamen* as well as providing any shoreside support required by the vessel.

60. Defendants Horizon and Hoegh Autoliners owed a duty to exercise reasonable care toward plaintiff cargo if Defendants failed to ensure that the vehicles being loaded onto the ship were safe for transport.

61. Defendants Horizon and/or Hoegh Autoliners negligently breached their duties of reasonable care in one or more of the following ways:

   a. Failing to maintain and/or prepare the vehicles in reasonably safe condition, fit for international transport, especially in light of the known risks and dangers of fires with used cars crammed together in closed, cramped decks on ro-ro transport ships;
   b. Failing to adequately inspect and test the vehicles prior to positioning them for loading onto the ocean liner for fitness to be transported;
   c. Failing to ensure that the batteries and /or fire were disconnected and/or removed from the vehicles before they were loaded onto the vessel;
   d. Failing to ensure that the fuel tanks were emptied and/or not punctured and thus a source of explosion before loading them into the vessel;
   e. Failing to drain the gasoline and/or disconnect and/or remove batteries and/ or sources of electricity or spark from the vehicles; and
   f. Failing to supply and provide sufficient tools and supplies to promptly extinguish a cargo fire during loading operations;

62. Horizon and/or Hoegh Autoliners' breach of one or more of there duties proximately caused the losses sustained by the plaintiffs.

WHEREFORE, Plaintiffs demand judgement against Defendants HORIZON TERMINAL SERVICES, LLC, and HOEGH AUTOLINERS, INC., for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and

damages endured and, punitive damages together with such other relief as the court deems met and just.

**Count IV: Negligence of SSA**

63. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 6, 17, 18, 23 through 32 and further allege:

64. At all times material hereto, Defendant SSA was responsible for the stevedore operations, loading the vehicles into the *Hoegh Xiamen* and then securing them before the ship departed from the port.

65. SSA owed a duty to exercise reasonable care to accomplish the loading of the hazardous and flammable cargo safely without permitting the cargo to catch fire either during loading or once loaded onto the vessel.

66. Defendant SSA negligently breached its duties of reasonable care, including but not limited to in one or more of the following ways:

   a. Negligently loading the vehicles onto the Hoegh Xiamen without regard to the risks of fire;
   b. Negligently failing to inspect the cars prior to loading onto the vessel;
   c. Negligently failing to ensure that the batteries and/or sources of electrical spark and/or fire were disconnected and/or removed from the vehicles before they were loaded onto the vessel;
   d. Negligently failing to ensure that the fuel tanks were emptied and/or not punctured and thus a source of explosion before loading onto the vessel;
   e. Negligently failing to ascertain or appreciate that one or more of the used cars was in a dangerous condition, unfit for transport on the closed cramped decks of the vessel, including but not limited to having decayed, defective wiring, connected batteries, fuel in the tanks, omitting sparks, or in danger of catching fire;
   f. Negligently permitting the fire to spread during or shortly after the loading operations;
   g. Negligently failing to ensure that all of the car keys were out of the ignitions and secured and that there were no electrical sparks or other ignition sources present once the cars were loaded onto the ship;
   h. Negligently failing to train for and practice responding to a vehicle fire during loading so as to extinguish the fire promptly before it spreads to other vehicles; and
   i. Failing to provide sufficient tools and supplies to promptly extinguish a cargo fire should it occur during loading operations.

67. The Defendant's breach of one or more of these duties proximately caused the damages /losses sustained by the Plaintiffs.

   WHEREFORE, plaintiffs demand judgement against Defendant SSA Atlantic, LLC, for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs

of suits, losses and damages endured and, punitive damages together with such other relief as the court deems met and just.

### COUNT V: Breach of contract and Negligence of Auto Export Shipping INC. and Auto Export Shipping Management

68. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 6, 19 through 22, 23 through 32 and further alleged:

69. At all times material hereto, Defendant Auto Export Shipping and /or Auto Export Shipping Management were the forwarding agent and owed a duty to exercise reasonable care towards plaintiffs' cargo.

70. Defendants Auto Export Shipping and/ or Auto Export Shipping Management negligently breached that duty of reasonable care, including but not limited to in the following ways:

   a. Failing to provide insured and reliable transportation as per the contract,
   b. Failing to coordinate the insurance of the goods and do the necessary follow up in case of an accident.
   c. Failing to oversee the transportation of the cargo and its packing and loading into the vessel.
   d. Failing to provide the insurance information for the cargo.
   e. Failing to assist in claims processing,
   f. Failing to exercise due skill and care in selecting the carriers and /or sub-carrier
   g. Failing to preserve the plaintiffs' interests.
   h. Failing to provide a safe and/ or reliable transportation of the goods.
   i. Failing to ensure that the sub-carrier has enough insurance to cover the goods in case of an accident.
   j. Failing to provide the plaintiffs with document explaining the nature of the services provided
   k. Failing to provide the contracts of carriage and/ or ocean sub-carrier to the plaintiffs.
   l. Failing to provide Plaintiffs the necessary information to follow in case of an accident/damages.

71. Auto Export Shipping and/or Auto Export Shipping Management's negligence to one or more of the above duties proximately caused the losses sustained by the plaintiffs.

   WHEREFORE, plaintiffs demand judgement against Defendant AUTO EXPORT SHIPPING, and AUTO EXPORT SHIPPING MANAGEMENT for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured and punitive damages together with such other relief as the court deems met and just.

### Count VI: Fraud by all Defendants

72. plaintiffs reallege and incorporate by reference the allegations of paragraph 1 to 32 And further allege:

73. plaintiffs were told false and/or conflicting statements including but not limited to:

   a. Requesting that all fees including the fees for the release documents that are supposed to be printed at the port of discharge be paid before a claim could be filed.
   b. Telling plaintiffs that that they would be given the opportunity to discuss with involved parties and/or insurance after the claim is filed,
   c. Agreeing to give plaintiffs the right to take over the claim whenever an agreement is not reached.
   d. Telling plaintiffs that all claims were individual and independent from other claims.
   e. Telling plaintiffs that all unaccepted claims will be shared among other claimant.
   f. Advising plaintiffs that all fees will be reimbursed.
   g. Failing to give back the transport and all related fees paid by plaintiffs.
   h. Failing to provide plaintiffs information about the claim
   i. Failing to disclose important information regarding the claim and /or the handling of the case.
   j. Telling plaintiffs that all offers were the same with no regard to the value of the damages/ loss.
   k. Giving the roundabout to the plaintiffs regarding the claim and transport fees.
   l. Most or all Defendants are acting as agents and/or acted as a carrier, subcontractor….
   m. Stating that all claimants are offered 40-42% what the insurance companies are offering for their damages, no exception.
   n. Stating that all offers were the same among all claimants independent of the insured value of the cargo.
   o. Providing no definite answer /information about how and who is handling the claim.

74. All Defendants fraudulent behavior further contributed to cause more damages and losses to plaintiffs.

WHEREFORE, plaintiffs demand judgement against all defendants for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured, and punitive damages together with such other relief as the court deems met and just.

**Count VII: Intentional confliction of economic damages for all defendants**

75. Plaintiffs reallege and incorporate by reference all allegations of paragraph 1 to 32 And further allege:

76. Defendants not only contributed to the loss cargo/claims damages but continued to cause plaintiffs economic damages including but not limited to:

    a. The value of a similar vehicle to the cargo lost in the fire continued to increase in value in the market.
    b. Dismissing all claims regarding the cargo and all related transport fees.
    c. Dismissing and /or not handling properly the claim regarding the cargo
    d. Plaintiffs 'source of income is stuck between the mischievous hands of the defendants as the cargo was not only lost in the fire, but the cycle of selling and buying stopped due to loss of the working capital.
    e. Requesting and keeping the Transport fees including the document fees for release at the destination.
    f. Plaintiffs continues to lose/ spend money pursuing the claim and cargo loss.
    g. Defendants were given plenty of opportunities to do the right thing, but defendants continue to cause more damages to the plaintiffs.
    h. Defendants' handling and /or mishandling of the claim further contributed to cause more economic losses to plaintiffs.

WHEREFORE, plaintiffs demand judgement against all defendants for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured and punitive damages together with such other relief as the court deems met and just.

### Count VIII: intentional infliction of emotional distress by all defendants

77. Plaintiffs reallege and incorporate by reference all allegations of paragraph 1 to 32 And further allege:

78. Defendants not only contributed to the cargo/claims damages but also caused and continued to cause plaintiffs emotional distress including but not limited to:

a. Telling confliction statements to plaintiffs regarding to claim and transport fees,

b. Abusing and mistreating plaintiffs with regards to claims, transport, and documents fees.

c. Causing stress and anxiety to the plaintiffs.

d. Defendants' handling and /or mishandling of the claim further contributed to cause more emotional distress to plaintiffs.

WHEREFORE, plaintiffs demand judgement against all defendants for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured and punitive damages together with such other relief as the court deems met and just.

### Count IX: loss of client and/or prospective clients

79. Plaintiffs reallege and incorporate by reference all allegations of paragraph 1 to 32 And further allege:

80. Defendants not only contributed to the cargo/claims damages but also caused the loss of client and prospective clients including but not limited to:

a. Plaintiffs' business is based largely by referral from past clients

b. Plaintiffs had a duty to their clients with regards to the cargo Toyota RAV4.

c. Plaintiffs failed to fulfil their duties due to the defendants' negligence of the cargo and/ or the claim.

d. Plaintiffs losses their clients and prospective clients due to the negligence and/or mishandling of the defendant.

f. Defendants, not only cause plaintiffs to lose their client but also continue to cause plaintiffs to lose all prospective clients.

WHEREFORE, plaintiffs demand judgement against all defendants for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured and punitive damages together with such other relief as the court deems met and just.

### Count X: Embezzlement by all Defendants

81. Plaintiffs reallege and incorporate by reference all allegations of paragraph 1 to 32 And further allege:

82. requesting and keeping the transport fees and all the documentation fees of $965.

83. An amount of $4609.20 was being offered to plaintiffs with regards to the cargo loss but the money was kept by Defendants.

85. Defendants not only defrauded and kept the transport and documentations fees, but Defendants also kept the money offered for the plaintiff's cargo.

Plaintiffs not only lost their cargo but were also stole/defrauded the transport and documentation fees, along with the money that was offered for the cargo.

WHEREFORE, plaintiffs demand judgement against all defendants for the replacement of the cargo loss in the fire, cost of transportation plus all related fees, and costs of suits, losses and damages endured and punitive damages together with such other relief as the court deems met and just.

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported bbb vv cv vvv b;y existing law or by nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 02-27-2023    |   02-27-2023

Signature of Plaintiffs  Saydatou Tatieta  |  [signature]

Printed Name of Plaintiffs  GHAYDATOU TATIETA , ISMAILA ILBOUDO